UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GREEN PARTY OF MICHIGAN,
LIBERTARIAN PARTY OF MICHIGAN,          Case No. 08-10149
REFORM PARTY OF MICHIGAN, METRO
TIMES, INC., and DAVID FORSMARK          Honorable Nancy G. Edmunds
d/b/a WINNING STRATEGIES,

        Plaintiff(s),

v.

MICHIGAN SECRETARY OF STATE
TERRI LYNN LAND,

        Defendant(s).

_____/

**OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT [4]**


        Plaintiffs Green Party of Michigan, Libertarian Party of Michigan, Reform Party of

Michigan, Metro Times, Inc., and David Forsmark d/b/a Winning Strategies filed this action

pursuant to 42 U.S.C. § 1983.  Plaintiffs challenge the constitutionality of Mich. Comp. Laws

§ 168.615c, which requires the Michigan Secretary of State to provide to the chairpersons

of the two major political parties, but to no one else, a file containing all of the political party

preference declarations of the persons who voted in the January 15, 2008 Michigan

Presidential Primary.   Specifically, Plaintiffs argue that the Statute violates their First

Amendment right to access and to report on information of public interest, and their

Fourteenth Amendment right to equal protection of the laws.  This matter comes before the

Court on Plaintiffs' motion for summary judgment.   For the reasons set forth below,

Plaintiffs' motion is GRANTED.

## I.    Facts

In 2007, the Michigan Legislature enacted Public Act 52 ("PA 52"), which took effect September 4, 2007.  The Act includes Mich. Comp. Laws § 168.615c ("the Statute"), which establishes certain procedures for the Michigan Presidential Primary.  Pursuant to PA 52, only "participating political parties" could take part in the primary.  Mich. Comp. Laws § 168.613a.  To qualify, a party must have received more than 20% of the total presidential vote cast in Michigan in the last presidential election.[1]  *Id.*  Under this criterion, only the Democratic and Republican parties were eligible to participate in the Michigan primary. (Pl.'s Mot. at 1.)  No candidate from a party other than Democratic or Republican has earned more than 20% of the presidential vote in Michigan since 1912.  *See* http://uselectionatlas.org.

The Statute requires each primary voter to "indicate in writing . . . which participating political party ballot he or she wishes to vote." Mich. Comp. Laws § 168.615c(1).  Michigan voters do not record a party preference when they register to vote.  *See* Mich. Comp. Laws § 168.495.  As a result, the party preference designations from the primary election are the best source of information about the party affiliation of a large group of Michigan voters. (Pl.'s Mot., Ex. B at ¶ 6.)

This party preference information is kept in a separate record, along with each voter's name, address, and voter file number.  Mich. Comp. Laws § 168.615c(3).  These records are generally confidential, are exempt from disclosure under the Freedom of Information

_____

[1]Prior to PA 52, a party qualified if it received more than 5% of the total vote cast nationwide for the Office of President in the last presidential election.  *See* Pl.'s Mot., Ex. D at 2.

Act, and "shall not be disclosed to any person for any reason." *Id.* at (4). Pursuant to the Statute, however, the Secretary of State is required to provide these records to the chairperson of each participating political party. *Id.* at (5). As stated above, only the Democratic and Republican parties qualified as participating political parties. Accordingly, pursuant to the Statute, they are entitled to the voter party preference information.

The participating political parties may use the information:

> to support political party activities by that participating political party, including, but not limited to, support for or opposition to candidates and ballot proposals. A participating political party may release the information transmitted to the participating political party under subsection (6) to another person, organization, or vendor for the purpose of supporting political party activities by that participating political party, including, but not limited to, support for or opposition to candidates or ballot proposals.

*Id.* at (8). Any person who uses the political preference information for a purpose not authorized by the Statute is subject to criminal penalties. *Id.* at (11).

Plaintiffs Green Party of Michigan, Libertarian Party of Michigan, and Reform Party of Michigan ("Plaintiff Third Parties") are political parties that did not qualify as participating political parties; consequently, they are not entitled to the party preference information pursuant to the Statute. Plaintiff Metro Times, Inc. has published a number of articles regarding the structure and rules governing the primary and the use of the party preference information. (Pl.'s Mot. at 3.) It intends to publish additional articles regarding the conduct of and participation in the primary. (*Id.* at 4.) Plaintiff Forsmark is a political consultant whose services include providing information to his clients regarding the likely party preference of voters. (*Id.*)

The Michigan Primary was held on January 15, 2008. The Statute requires the Secretary of State to provide the party preference information within 71 days of the

3

presidential primary.  Mich. Comp. Laws § 168.615c(6).  This puts the deadline at March

26, 2008.[2]  This matter is now before the Court on Plaintiffs' motion for summary judgment.

## II.    Summary Judgment Standard

Summary judgment is appropriate only when there is "no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement

to require submission to a jury or whether it is so one-sided that one party must prevail as

a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Rule 56(c)

mandates summary judgment against a party who fails to establish the existence of an

element essential to the party's case and on which that party bears the burden of proof at

trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue

of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party meets this burden, the

non-movant must come forward with specific facts showing that there is a genuine issue

for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In

evaluating a motion for summary judgment, the evidence must be viewed in the light most

favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The non-moving party may not rest upon its mere allegations, however, but rather "must

set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

The mere existence of a scintilla of evidence in support of the non-moving party's position

---

[2]The Court previously granted Plaintiffs' motion for temporary restraining order and
enjoined Defendant from distributing the party preference information until further order of
the Court.  (Docket Text # 10.)

will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

## III. Analysis

The United States Supreme Court has set forth the process by which the Court assesses the constitutionality of a state election law:

> It must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights.

*Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).

Under this standard, the level of scrutiny the Court will apply depends upon the extent to which the Statute burdens Plaintiffs' constitutional rights. "[W]hen a state election law provision imposes only reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (citation and internal quotation marks omitted). When, however, "those rights are subjected to 'severe' restrictions, the regulation must be narrowly drawn to advance a state interest of compelling importance." *Id.* (citation and internal quotation marks omitted).

Plaintiffs argue that the Statute violates their First and Fourteenth Amendment rights. The Court will address the Fourteenth Amendment claim first, as it is dispositive.[3]

---

[3]Defendant argues that Plaintiffs' claims are barred by the doctrine of laches. Laches consists of two elements: "(1) unreasonable delay in asserting one's rights; and (2) a resulting prejudice to the defending party." *Brown-Graves Co. v. Central States, Southeast and Southwest Areas Pension Fund*, 206 F.3d 680, 684 (6th Cir. 2000). Because

Plaintiffs contend that the Statute violates the Equal Protection Clause of the Fourteenth Amendment, which commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Plaintiffs claim "that it is a denial of equal protection for the two major political parties to receive a state-generated resource of great value for general election campaigns, while all other parties are denied access to and use of that resource." (Pl.'s Reply at 1.)

At the outset, before the Court applies the *Anderson* standard, it must address Defendant's assertion that Plaintiffs' Equal Protection claim must fail because Plaintiffs are not similarly situated with the Democratic and Republican parties. Defendant points out that "section 615c creates a classification": those parties that met the 20% threshold and those that did not. (Def.'s Resp. at 5.) Because Plaintiff Third Parties did not meet the threshold, Defendant argues, they "simply are not similarly situated to the participating political parties that have met" the threshold. (*Id.*)

Defendant's proposed approach to the Equal Protection Clause would strip the clause of all meaning. Any statute could avoid running afoul of the clause simply by creating an arbitrary classification to divide those whom the statute intends to protect from those it does not. This would strike at the very heart of the clause, the basic concern of which is "with state legislation whose purpose or effect is to create discrete and objectively identifiable classes." *San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 60 (1973).

Defendant offers no evidence of prejudice, Plaintiffs' claims are not barred by the doctrine of laches.

Furthermore, as Plaintiffs point out, because political parties do not compete with each other in the primary process, they have little interest in how other parties nominate candidates. (Pl.'s Reply at 1.) In a general election, in contrast, the parties do compete directly with each other, and "they have the same interest in having resources which assist them in competing." (*Id.*) As a result, all "political parties are similarly situated with regard to their need for and potential use of valuable party preference information for the general election." (*Id.*)

The classification drawn by the statute and the 20% threshold is wholly arbitrary, and the Court determines that Plaintiff Third Parties are similarly situated to the Democratic and Republican parties for purposes of Equal Protection analysis. Accordingly, the Court will examine Plaintiffs' Equal Protection claims under the standard set forth in *Anderson*.

**A. Character of Plaintiffs' Asserted Injury**

Plaintiffs argue that the Statute burdens a number of their constitutional rights. First, they suggest it implicates "two different, although overlapping kinds of rights - [1] the right of individuals to associate for the advancement of political beliefs, and [2] the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Williams v. Rhodes*, 393 U.S. 23, 30 (1968). The statutes at issue in *Williams* "made it virtually impossible for a new political party . . . to be placed on the state ballot" for a presidential election. *Id.* at 24. Because the Statute at issue in this case does not affect the Plaintiff Third Parties' ability to earn a place on the ballot, the Statute does not burden voters' rights to cast their votes effectively.

The Supreme Court has recognized, however, that "[a] burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on

7

associational choices protected by the First Amendment.  It discriminates against those candidates and-of particular importance-against those voters whose political preferences lie outside the existing political parties." *Anderson*,  460 U.S. at 793-94.  Here, because the Statute provides the voter preference information only to the major political parties, it creates "a burden that falls unequally on new or small political parties."  Consequently, the Statute burdens Plaintiffs' First Amendment right to association.

The Court is also convinced that the Statute denies Plaintiff Third Parties an equal opportunity to win the votes of the electorate.  Plaintiffs argue that "[o]ne of the most valuable kinds of information for use in campaigns is the party affiliation of individual voters."  (Pl.'s Mot., Ex. B at ¶ 3.)  Indeed, the Michigan Supreme Court has recognized that such information is "part of the market research" for political parties.  *Grebner v. State*, 744 N.W.2d 123, 127 (Mich. 2007).  Defendant does not dispute the valuable nature of the party affiliation information or that, pursuant to the Statute, the information will be provided only to the major political parties.

Defendant does, however, challenge Plaintiffs' contention that the Statute impedes their ability to have an equal opportunity to win votes.  Defendant argues that the classification is neutral and that the Statute does not prevent anyone but the major parties from obtaining or using the information.  (Pl.'s Resp. at 6.)  This argument fails to appreciate that when the Statute was passed in 2007, only the Democratic and Republican parties had met the 20% threshold in the previous presidential election.  Thus, the Statute does limit the potential recipients of the information to the major parties.  Accordingly, while at first blush the Statute may appear neutral on its face, further inquiry reveals that the Statute, by its own terms, benefits the major political parties to the detriment of all others.

The Supreme Court has recognized the potential hazards inherent in this kind of law and has cautioned that "because the interests of minor parties . . . are not well represented in state legislatures, the risk that the First Amendment rights of those groups will be ignored in legislative decisionmaking may warrant more careful judicial scrutiny." *Anderson*, 460 U.S. at 793 n.16. *See also Clingman v. Beaver*, 544 U.S. 581, 603 (2005) (O'Connor, J., concurring) (noting that "the State is itself controlled by the political party or parties in power, which presumably have an incentive to shape the rules of the electoral game to their own benefit" and that when regulations "have discriminatory effects, there is increasing cause for concern that those in power may be using electoral rules to erect barriers to electoral competition").

In sum, the Court finds that the Statute burdens Plaintiffs' First Amendment right to association as well as their right to an equal opportunity to win the votes of the electorate. The Court now will address the magnitude of these burdens.

**B. Magnitude of Plaintiffs' Asserted Injury**

Plaintiffs assert that the burdens imposed by the Statute are "quite heavy." First, Plaintiffs note that because Michigan voters do not record a party preference when they register to vote, the party preference information required by the Statute is the "single-most reliable source of party affiliation data for a great number of Michigan voters." (Pl.'s Mot. at 7.) Defendant's argument that the burden is light because minor parties have access to a list of voters who voted in the primary is thus to no avail, for it is the party preference information, and not simply the list of voters, that "enables a campaign to target campaign efforts at voters most likely to be responsive, to identify possible campaign contributors, and aids in election-day get-out-the-vote efforts." (Pl.'s Mot., Ex. B at ¶ 3.) And while voter

lists may be generally available to all parties, the party preference information is available only to the major parties.  As Defendant does not dispute the value of the party preference information, this constitutes a heavy burden.

Plaintiffs also point to cases in which statutes similar to that at issue here were found to violate the Equal Protection Clause, even though the burdens imposed by those statutes were less than the burdens imposed in this case.  In *Socialist Workers Party v. Rockefeller*, 314 F. Supp. 984 (S.D.N.Y.), for example, the court considered a statute that required lists of registered voters to be sent free of charge to parties that earned more than 50,000 votes in the last gubernatorial election.  *Id.* at 995.  Other parties could purchase the lists for the cost of reproduction, and the lists also were available for public inspection at the office of the board of elections.  *Id.*  Nonetheless, the court held that "the effect of these provisions . . . is to deny independent or minority parties . . . an equal opportunity to win the votes of the electorate."  *Id.*  The court noted that "[t]he state is not required to provide such lists free of charge, but when it does so it may not provide them only for the large political parties and deny them to those parties which can least afford to purchase them."  *Id.* at 996.  Thus, even though minor parties could purchase the lists or view the lists in a public place, the court held that the statute was unconstitutional.  *Id.* at 997.

The law that was struck down in *Socialist Workers Party* was re-enacted in "all material, unlawful respects."  *Schulz v. Williams*, 44 F.3d 48, 60 (2d Cir. 1994).  The *Schulz* court struck down the statute on the same basis as did the *Socialist Workers Party* court.  *Id.*  Another provision of the statute at issue in *Schulz* required voter party preference information to be sent to the major political parties only.  *Id.* at n.11.  The court declined to review the constitutionality of the provision, as the district court had not specifically

10

considered it. Nonetheless, the court did note that "we see no reason why the patent constitutional infirmity of section 5-602 [voter registration lists at issue in *Socialist Workers Party*] would not apply to section 5-604 [party preference information]." *Id.*

The court in *Libertarian Party of Indiana v. Marion County Board of Voter Registration*, 778 F. Supp. 1458 (S.D. Ind. 1991), addressed a statute that required a list of registered voters to be provided only to "the major political parties." *Id.* at 1459. Additional copies of the list were open to public inspection at the office of the board of registration. *Id.* The court stated:

> Like a restriction on access to the ballot, restrictions on the ability of some political parties to use Registration Lists impinges upon both the members' freedom to associate to express their views to the voters and the voters' ability to express preference in light of the political views being advanced. Although the plaintiffs have access to the Registration List, their undisputed contention is that they would have to expend significant amounts of labor and money to have the list in a usable form, a burden not imposed on the major political parties.

*Id.* at 1463. The court concluded that the statute violated the Equal Protection Clause because "no important state interest has been established which justifies a refusal to distribute copies of the Registration List to [minor parties] in the same way that the lists are distributed to the major political parties." *Id.* at 1464.

Defendant seeks to distinguish these cases "because here the information is not available to the public." (Def.'s Resp. at 13.) While this certainly is a distinguishing characteristic, it is not one that works to Defendant's benefit. In the above-mentioned cases, the courts found the statutes to be unconstitutional even though the information at issue was otherwise available to the plaintiffs. Here, in contrast, Plaintiffs cannot obtain the

party preference information any other way. Thus, the Statute at issue here creates much greater burdens than did similar statutes that were held to be unconstitutional.

Defendant argues that, even if Plaintiffs' constitutional rights are implicated, any burden is "minor, indirect, and remote." (Def.'s Resp. at 7.) Defendant offers no evidence to support its claim, but instead baldly asserts that the Statute "does not interfere with minor party Plaintiffs' freedom to associate, to express their views to voters, or to continue to garner political support." (*Id.* at 8.) In fact, this is precisely what the Statute does, as "[a]ccess to the party preference information would enable a third party to direct its campaign efforts, including such activities as mailing campaign literature, door-to-door canvassing and phone banks to voters who are more likely to be responsive to its issue positions and candidates." (Pl.'s Mot., Ex. B at ¶ 4.)

In any event, Defendant argues, the burdens at issue here are surely less severe than those imposed when a small political party is denied access to the ballot. And as Defendant correctly points out, "the Supreme Court has routinely upheld such schemes as constitutional." (Def.'s Resp. at 9.) In three of the cases cited by Defendant, however, the Supreme Court upheld such schemes only after finding that they furthered a compelling state interest. *See Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979) ("When such vital individual rights are at stake, a State must establish that its classification is necessary to serve a compelling interest."); *Storer v. Brown*, 415 U.S. 724, 736 (1974) ("We also consider that interest as not only permissible, but compelling and as outweighing the interest the candidate and his supporters may have in making a late rather than an early decision to seek independent ballot status."); *Am. Party of Texas v. White*, 415 U.S. 767, 780 (1974) (holding that validity of statute depends on whether burdens "are

necessary to further compelling state interests").  In the fourth case cited by Defendant, the Court concluded that the statute did not impose a burden on minor parties.  *Jenness v. Fortson*, 403 U.S. 431, 440-41 (1971) ("We cannot see how Georgia has violated the Equal Protection Clause of the Fourteenth Amendment by making available these two alternative paths, neither of which can be assumed to be inherently more burdensome than the other.")

Thus, because the Supreme Court upheld the statutes in the cases cited by Defendant only after applying strict scrutiny or after determining that no burden was imposed, the cases are inapposite to the issue of the magnitude of the burden imposed by the Statute at issue in this case.[4]  As the burdens involved here are greater than the burdens involved in other cases in which courts found similar statutes to be unconstitutional, and as Defendant has offered no evidence to counter Plaintiffs' characterization of the burdens as "quite heavy," the Court finds that the burdens imposed by the Statute are severe.  Moreover, the restrictions imposed are not "nondiscriminatory."  As a result, to pass constitutional muster, the Statute "must be narrowly drawn to advance a state interest of compelling importance."  *Burdick*, 504 U.S. at 434.

### C. State's Interests

Defendant has put forward a number of State interests to justify the burdens imposed by the Statute.  In assessing these purported interests, "the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights."  *Anderson*, 460

---

[4]The cases are relevant to the question of the State's interests and are discussed more fully below in that context.

13

U.S. at 789. For the sake of clarity, the Court will address each proposed interest in turn. First, though, the Court will address Defendant's overarching contention that any burdens imposed by the Statute are justified by the State's power to regulate its own elections; this includes the power to regulate the time, place, and manner of elections, as well as the power to structure and monitor the election process. (Def.'s Resp. at 3.) (citing *Clingman*, 544 U.S. at 581; *Burdick*, 504 U.S. at 433). Michigan's power to regulate the time, place, and manner of its elections is not at issue here. The process of the primary election itself is not related to who receives the party preference information after the election has occurred. Moreover, notwithstanding the State's broad power to regulate elections, "[r]egulations that impose severe burdens on associational rights must be narrowly tailored to serve a compelling state interest." *Clingman*, 544 U.S. at 586. Accordingly, because the Statute imposes severe burdens, it must pass strict scrutiny if it is to survive.

### 1. Notify Major Parties that Primary Occurred

The first State interest put forward by Defendant is that the Statute "satisfies the [participating political] parties that the primary actually occurred." (Def.'s Resp. at 8.) This may be a legitimate State interest, but it hardly rises to the level of compelling. Moreover, it is not necessary to burden Plaintiffs' rights in pursuit of this interest. While providing the major parties with party preference information may help to establish that the primary took place, Defendant does not explain how this goal would be undercut by providing the same information to Plaintiff Third Parties as well. Because this State objective could be "served equally well in significantly less burdensome ways," *Am. Party*, 415 U.S. at 781, the asserted interest does not justify the burdens placed on Plaintiffs.

### 2. Ensure Compliance with Party Rules

The Statute's asserted justification, one echoed by Defendant in her brief, is "to ensure compliance with the state and national political party rules of each participating political party." Mich. Comp. Laws § 168.615c(5). This is a legitimate and strong State interest, but it is not served by the Statute.

The Democratic Party Delegate Selection Rules for the 2008 Democratic National Convention provide:

> A. Participation in the delegate selection process shall be open to all voters who wish to participate as Democrats.

> 1. Democratic voters shall be those persons who publicly declare their Party preference and have that preference publicly recorded.

(Pl.'s Mot., Ex. E at 3.) The Republican Party does not have a similar rule.[5] Thus, providing the party preference information to the major parties ensures compliance only with the national rules of the Democratic Party; and even this is questionable, as the limited access to party preference information imposed by the Statute hardly constitutes a "publicly recorded" declaration. Moreover, Defendant has not addressed how providing the party preference information to Plaintiff Third Parties would interfere with this aim.

More importantly, another provision of PA 52 moved the date of the 2008 Michigan Presidential Primary from the fourth Tuesday in February to January 15, 2008. Mich. Comp. Laws § 168.613a. This is directly at odds with the major parties' rules. The Democratic Rules state that no primaries "may be held prior to the first Tuesday in

---

[5] *See* Def.'s Mot., Ex. D at 1: "In recent elections, Republicans selected their delegates in the Michigan presidential primary, which [prior to the passage of PA 52 in 2007 was] an 'open' primary (one in which any elector may vote). . . . [A]n open primary is contrary to national Democratic Party rules."

15

February."[6]  (Def.'s Mot., Ex. E at 12, ¶ 11A.)  Because the Michigan Primary violated Democratic Party rules, the Democratic National Committee decided that no delegates chosen as a result of the Primary will be seated at the 2008 Democratic National Convention.  (Def.'s Mot. at 12.)  The Primary also violated Republican National Committee rules and, as a result, Michigan Republicans will be deprived of half of their convention delegates.  (*Id.*)

The Statute caused the Primary to be held in direct contravention of party rules, and both major political parties have suffered serious consequences as a result.  The Court therefore rejects the notion that the Statute "ensure[s] compliance with the state and national political party rules of each participating political party."

### 3.  Voter Privacy

Defendant suggests that the State's interest in "limiting access to and use of voter preference information collected in the primary is sufficient to justify" the Statute's restrictions.  (Def.'s Resp. at 10.)  In support, Defendant notes that Michigan law has evolved over the years to provide greater confidentiality to voter preference.  (*Id.* at 13 n.51.)  Defendant views PA 52 as the culmination of that evolution and concludes that "PA 52 assures Michigan voters that if they declare the party they want, the information will not be made available to the general public."  (*Id.*)

The weakness in Defendant's position is that PA 52 makes no such assurances. Instead, the Statute allows the major political parties to use the party preference information in any way, so long as it is "to support political party activities."  Mich. Comp.

---

[6]The rules exempt from this requirement Iowa, New Hampshire, Nevada, and South Carolina.  (*Id.*)

Laws § 168.615c(8). Indeed, the Statute specifically authorizes the major parties to "release the information . . . to another person, organization, or vendor." *Id.* Thus, while the Statute limits who receives the party preference information in the first instance, the Statute places no meaningful restriction on how the information may be disseminated subsequently. Accordingly, while the State's asserted interest in protecting voter privacy is compelling, that interest is not served by the Statute.

### 4. Prevent Fraud and Corruption

Defendant also asserts that the Statute is justified based on the State's interest to prevent fraud and corruption. (Def.'s Resp. at 11.) Defendant never actually explains how releasing the party preference information to Plaintiff Third Parties would increase the likelihood of fraudulent behavior. Moreover, the Court agrees that the "desire to weed out fraudulently registered voters suggests that more political parties should have access to the [party preference information] rather than fewer." *Libertarian Party of Ind.*, 778 F. Supp. at 1464. As a result, the State's desire to prevent fraud and corruption does not justify the burdens imposed by the Statute.

### 5. Stability of Political System

Defendant's final contention is that the Statute protects the State's "strong interest in the stability of [its] political systems." *Timmons*, 520 U.S. at 366. Defendant cites numerous cases to support its position. All of these cases, however, involved situations and state interests not implicated here. As a result, the cases are not relevant to the issue before the Court.

A number of the cases cited by Defendant, for example, involve a minor party's access to the ballot. *See Am. Party*, 415 U.S. at 781 (upholding validity of statute that

requires minor parties to nominate candidates by convention but allows major parties to use primaries); *Jenness*, 402 U.S. at 440 (upholding statute that requires minor party candidate to procure signatures of 5% of electorate in order to be placed on ballot); *Munro v. Socialist Workers Party*, 479 U.S. 189, 190-91 (1986) (upholding statute that requires minor party candidate to receive at least 1% of votes cast in primary election before name will be placed on general election ballot); *Miller v. Lorain County Bd. of Elections*, 141 F.3d 252, 254 (6th Cir. 1998) (upholding statute that requires independent congressional candidate to obtain signatures of 1% of voters in prior gubernatorial election to gain access to ballot).[7] In these types of cases, "[t]here is surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot – the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election." *Jenness*, 402 U.S. at 442.

No such interests are implicated here, for "Plaintiffs have never suggested that states may not have different nominating procedures for major or minor parties, even to the extent of excluding minor parties from state-run primaries." (Pl.'s Reply at 1.) Moreover, in each of the cases cited by Defendant, independent candidates had a route to the ballot. Here, in contrast, Plaintiff Third Parties have no other way to obtain the party preference information. Accordingly, the precedents cited by Defendant that involve access to the ballot are not relevant to this case.

---

[7]Contrary to Defendant's assertion, *Bullock v. Carter*, 405 U.S. 134 (1972), did not uphold the constitutional validity of the statute in question. Rather, the Court held that the statute "results in a denial of equal protection of the laws." *Id.* at 149.

Similarly not on point are the cases cited by Defendant that address the constitutional validity of statutes that govern how a candidate's name appears on the ballot. *See Timmons*, 520 U.S. at 354 (upholding the validity of a statute that prohibits a candidate from appearing on the ballot as the candidate of more than one party); *Schrader v. Blackwell*, 241 F.3d 783, 784 (6th Cir. 2001) (upholding statute that prohibits candidates from listing on the ballot their affiliation with minor political parties). The courts in those cases recognized that the burdens imposed were not severe. *Timmons*, 520 U.S. at 364; *Schrader*, 241 F.3d at 791. Moreover, the burdens that were imposed were justified by the states' interests "in avoiding voter confusion and overcrowded ballots." *Timmons*, 520 U.S. at 364. Plaintiffs' challenge to the Statute in this case does not involve access to the ballot, and providing the party preference information to Plaintiff Third Parties would not lead to voter confusion or overcrowded ballots. Thus, *Timmons* and *Schrader* are not on point.

Finally, Defendant cites to cases that tested the constitutional validity of closed primaries. *See Clingman*, 544 at 584 (upholding the constitutional validity of a semiclosed primary system, in which a political party may invite only its own party members and voters registered as Independents to vote in the party's primary); *Rosario v. Rockefeller*, 410 U.S. 752, 760 (1973) (upholding statute that requires a voter to register as a party member 30 days before the general election in order to vote in a subsequent closed primary election). In these cases, the Court noted the purpose of a closed primary election: "to inhibit party 'raiding,' whereby voters in sympathy with one party designate themselves as voters of another party so as to influence or determine the results of the other party's primary." *Rosario*, 410 U.S. at 760. Because the Statute in this case involves the dissemination of information after the primary has occurred, there is no risk of cross-over voting. The state

interests involved in *Rosario* and *Clingman* are therefore not present in this case. As a result, those cases do not support the constitutional validity of the Statute.

Defendant, in an effort to show the State's interest in the stability of its political systems, cites to cases that involved access to the ballot, how a candidate's name appears on the ballot, and the constitutionality of closed primaries. These issues are not before the Court in this case; thus, the states' interests considered in those cases, and the courts' analysis of those interests, have no bearing here. Further, Defendant has failed to establish that the State's asserted interests would be implicated if the party preference information were to be released to Plaintiff Third Parties, or were not released to any party. Accordingly, the State's purported interest in political stability does not "make it necessary to burden the plaintiff[s'] rights." *Anderson*, 460 U.S. at 789.

The State's asserted interests do not justify the burdens imposed by the Statute on Plaintiffs' First Amendment right to association and on their right to an equal opportunity to win the votes of the electorate. The State is not required to provide the party preference information to any party. When it chooses to do so, however, it may not provide the information only to the major political parties.

The Court holds that Mich. Comp. Laws § 168.615c deprives Plaintiffs of equal protection of the laws in violation of the Fourteenth Amendment. The Statute is therefore constitutionally invalid, and Plaintiffs' motion for summary judgment is GRANTED. This result makes it unnecessary for the Court to address Plaintiffs' First Amendment claims.

### D. Severability

PA 52 contains a nonseverability clause:

> If any portion of this amendatory act or the application of this amendatory act to any person or circumstances is found invalid by a court, it is the intent of the legislature that the provisions of this amendatory act are nonseverable and that the remainder of the amendatory act shall be invalid, inoperable, and without effect.

*See* Mich. Comp. Laws § 168.19 "Historical and Statutory Notes." Both parties assert that the Court's ruling does not require the Court to address the issue of severability. (Def.'s Resp. at 22; Pl.'s Reply at 4.) The Court agrees that the issue of severability is beyond the scope of the claims raised by Plaintiffs in this motion. Accordingly, the Court makes no ruling regarding the constitutional validity of the remainder of PA 52.

## IV.  Conclusion

For the above-stated reasons, Plaintiff's motion for summary judgment is GRANTED. Mich Comp. Laws § 168.615c is declared unconstitutional, and Defendant is enjoined from carrying out the responsibilities imposed by subsections (5) and (6) of the Statute.


                    s/Nancy G. Edmunds_____
                    Nancy G. Edmunds
                    United States District Judge

Dated:  March 26, 2008

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 26, 2008, by electronic and/or ordinary mail.

                    s/Carol A. Hemeyer_____
                    Case Manager